**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| JUSTIN PARSHALL, | ) | ELECTRONICALLY FILED |
|  | ) |  |
| *Plaintiff*, | ) | Civil Action No. |
|  | ) |  |
| vs. | ) |  |
|  | ) |  |
| WARRAICH BROTHERS LLC d/b/a | ) |  |
| SAVE-A-LOT, | ) |  |
|  | ) |  |
| *Defendant*. | ) | **JURY TRIAL DEMANDED** |

**COMPLAINT IN CIVIL ACTION**

Plaintiff, Justin Parshall, by and through his undersigned counsel, now files this Complaint in Civil Action against Defendants, Warraich Brothers, LLC d/b/a Save-A-Lot, averring as follows:

**PARTIES**

1.      Plaintiff, Justin Parshall, ("Plaintiff") is an adult individual who currently resides in South Port, Pennsylvania.

2.      Prior to Plaintiff's commencement of employment with Save-A-Lot, Plaintiff was diagnosed with and treated for Post Traumatic Stress Disorder (the "Disability") and remains in therapy and medical treatment for same.  Furthermore, upon hiring Plaintiff, Save-A-Lot was advised of the Disability.

3.      The ADA defines the term "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3)).  42 U.S.C. § 12102.

4.      Plaintiff possesses a "disability" pursuant to 42 U.S.C. § 12102(A) as Plaintiff was impaired by the Disability.  At all times material, the Disability impaired Plaintiff's major life activities including working, pursuing personal hobbies and fulfillment, eating, sleeping, and concentrating.

5.      Defendant, Warraich Brothers, LLC d/b/a Save-A-Lot, ("Save-A-Lot") is registered with Pennsylvania's Department of State (the "DOS") as a limited liability corporation.  Defendant maintains a registered address of 358 North Sheridan Street Johnston, Pennsylvania 15906 and a principal place of business within the Commonwealth of Pennsylvania at 346 Sheridan Street Johnstown, Pennsylvania 15906, which is where Plaintiff reported for his workplace duties (the "Facility").

## JURISDICTION AND VENUE

**A.      This Court Possesses Subject Matter Jurisdiction Pursuant to 28 U.S.C. § 1331 and Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367.**

6.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 ("Federal Question Jurisdiction"), as Plaintiff is advancing claims under Title VII of the Civil Rights Act of 1964 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Act Amendments of 2008, 42 U.S.C. § 12101, *et seq.* (the "ADA") (Plaintiff's claim arising under Title VII and the ADA are identified as the "Federal Law Claims").

7.      Plaintiff is also advancing claims under the Pennsylvania Human Relations Act 43 P.S. § 951, *et seq.* ("PHRA") (Plaintiff's claims arising under the PHRA are identified as the "State Law Claims").

8.      This Court may exercise supplemental jurisdiction over the State Law Claims pursuant to 28 U.S.C. § 1367(a) as the Federal Law Claims and the State Law Claims share

operative facts that support the corresponding causes of action within the Federal Law Claims and the State Law Claims.

9.      Further, the operative facts between the Federal Law Claims and the State Law Claims mirror one another to such a degree that they form the "same case or controversy" under Article III § 2 of the United State Constitution which further supports this Court's exercise of supplemental jurisdiction over the State Law Claims.

**B.      The United States District Court for the Western District of Pennsylvania is the Appropriate Venue for this Matter Pursuant to 28 U.S.C. § 1391(b).**

10.      Venue is proper in the United States District Court for the Western District of Pennsylvania, Johnstown Division (the "Western District") as a substantial part of the events and omissions giving rise to the Federal Law Claims and State Law Claims occurred within this judicial district.  Therefore, venue is proper pursuant to 28 U.S.C. § 1391(b).

11.      Specifically, these events and omissions occurred in Cambria County, Pennsylvania which is one of the counties encompassed by the Western District.

12.      This matter is properly before the Johnstown Division of the Western District given the conduct complained of herein arose in Cambria County, Pennsylvania, pursuant to Local Rule 3 (LCvR 3).

**C.      This Court May Exercise Personal Jurisdiction Over Defendant.**

13.      This Court may exercise personal jurisdiction over Defendant pursuant to 42 Pa. C.S. § 5301(a)(2), and this Court may exercise jurisdiction over Defendant in compliance with the Due Process Clause of the United States Constitution.

14.      Personal jurisdiction is proper over a defendant if the defendant is a registered Pennsylvania entity and has thus "consented" to the exercise of general personal jurisdiction pursuant to 42 Pa. C.S. § 5301.  *Aetna Inc. v. Kurtzman Carson Consultants, LLC*, No. 18-470,

2019 BL 114021, at *5 (E.D. Pa. Mar. 29, 2019) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Bane v. Netlink, Inc.*, 925 F.2d 637, 641 (3d Cir. 1991)).

15.     42 Pa. C.S. § 5301 states: "The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person." 42 Pa. C.S. § 5301(a). This definition is expanded to "corporations" pursuant to 42 Pa. C.S. § 5301(a)(2) which provides:

> Corporations.—
> (i) Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth.
> (ii) Consent, to the extent authorized by the consent.
> (iii) The carrying on of a continuous and systematic part of its general business within this Commonwealth.

42 Pa. C.S. § 5301(a).

16.     As discussed above, Defendant has registered itself as a domestic business corporation in the Commonwealth of Pennsylvania and accordingly subjected itself to the general jurisdiction of Pennsylvania's tribunals; further, Defendant maintains the Facility in Pennsylvania and conducts business operations within Pennsylvania. Accordingly, Defendant may properly be personally brought before this Court pursuant to 42 Pa. C.S. § 5301(a)(2).

**D.     Plaintiff Has Exhausted His Administrative Remedies; His Federal and State Law Claims Are Properly Before This Court.**

17.     Plaintiff has satisfied all procedural and administrative prerequisites under 42 U.S.C. § 2000e-5 and 43 P.S. § 959, and now may proceed to bring this action before the Court. Specifically:

> a.  On August 25, 2023, Plaintiff dual filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") seeking redress for the Federal Law Claims and the State Law Claims at charge number 533-2023-02732

(the "<u>EEOC Charge</u>") and with the Pennsylvania Human Relations Commission

(the "<u>PHRC</u>").

b. On June 11, 2024, the EEOC issued the Notice of Right to Sue ("<u>RTS Notice</u>")

wherein Plaintiff was afforded 90 days within which to timely file the Federal Law

Claims and the State Law Claims.  A true and correct copy of the RTS Notice is

attached hereto as "**Exhibit A**" and incorporated herein.  The instant Complaint is

filed within the 90-day time period.

## FACTUAL BACKGROUND

18.     In or around January 2023, Plaintiff commenced his employment with Save-A-Lot

in the role of "Stocker".  Within his role, Plaintiff was responsible for sorting, stocking, and

maintaining inventory of grocery items.

19.     Plaintiff was paid at an hourly rate of $7.25 and routinely worked 40 hours per

week.

**A.     Plaintiff was Subjected to a Hostile Work Environment.**

20.     At all times relevant herein, Plaintiff was under the supervision of Store Manager,

Mandy (last name unknown) ("<u>Mandy</u>").

21.     From the outset of Plaintiff's employment, Mandy made disparaging, offensive, and

inappropriate comments towards Plaintiff.

22.     Mandy's crude and inappropriate comments eventually morphed into comments

and innuendos that were specifically sexual in nature.

23.     For example, Mandy would ask Plaintiff a question ladened with transparent

sexually perverse innuendo and then when Plaintiff would call out the blatant sexual innuendos,

she would immediately follow-up with statements directed to Plaintiff such as, "*Well, as long as*

*your mind isn't in the gutter*" or "*get your mind out of the gutter*", insinuating that Plaintiff was creating the sexual innuendos himself.

24.     Furthermore, Mandy began making comments and statements to coworkers and customers alike, insinuating that Plaintiff would "love to have sex with her [Mandy]" and even went so far as to tell employees at Save-a-Lot that she was "having sex" with Plaintiff on a repeated and frequent basis.

25.     At all times these comments and statements from Mandy were unequivocally untrue, unwarranted, and unwelcomed by Plaintiff, and he made the same abundantly clear to Mandy each time she made a comment ladened with sexual innuendo.

26.     In or around February 2023, Plaintiff arrived at the Facility ready to perform his job duties.  Prior to commencing his workday, Plaintiff was summoned to the front of the store by Mandy.

27.     Upon arriving at the front of the store, Plaintiff saw Mandy operating a cash register with numerous customers in line awaiting service.  As soon as Mandy saw Plaintiff, she loudly asked, "*Justin, you would let me sit on your face, right*?"

28.     Plaintiff was mortified by this comment and immediately verbally protested and rebuffed Mandy's sexually charged comment.

29.     Shortly after this interaction, Plaintiff approached Mandy and requested to be moved to work a later shift, specifically to remove himself from proximity to Mandy and the potentiality of being sexually harassed again.  At this time, Mandy approved Plaintiff's request.

30.     However, the next day, Mandy approached Plaintiff and told him, "*I'm just going to keep you on the morning shift with me*." Clearly, Mandy had no plan to allow Plaintiff to work a different shift, and maliciously denied Plaintiff's request.

6

31.     Solely in an effort to maintain his employment, Plaintiff continued to work the same shift as Mandy, and unsurprisingly, Mandy's pattern of sexual harassment continued without reprieve.

**B.     Save-A-Lot Retaliated Against Plaintiff for Reporting Sexual Harassment.**

32.     In February 2023, after several weeks of enduring the sexually charged comments and aggressions, Plaintiff informed a coworker that the conditions at the Facility were becoming intolerable for him, and he was contemplating reporting Mandy's conduct to owner of Save-A-Lot, Shakeel (last name unknown) (hereinafter, "Shakeel Doe").

33.     Shortly thereafter, Mandy became aware that Plaintiff had openly expressed that he was contemplating reporting her conduct to Shakeel Doe.

34.     At this point, Mandy approached Plaintiff and inquired as to why he was planning on reporting her to Shakeel Doe.  Plaintiff informed Mandy that her conduct had made the work environment at Save-A-Lot unbearable, and he needed her conduct to stop.  Mandy dismissed Plaintiff's reasoning and abruptly ended the conversation.

35.     In late February 2023, Plaintiff approached Mandy and requested to have three hours off work so he could attend an appointment with his treating psychologist ("Psychologist Appointment").

36.     Mandy was previously made aware of Plaintiff's Disability, and Plaintiff made her aware that this appointment was required for treatment of the Disability.  After making Mandy aware of the necessity of the appointment, she granted Plaintiff the leave to attend the  Psychologist Appointment.

37.     The day after the appointment, Plaintiff noticed that the most recent employee schedule had not been posted, and he promptly called Mandy to inquire when his next scheduled

shift was.  At this point, Mandy informed Plaintiff that she had not made the schedule and to call back the next day for the employee schedule.

38.      The following day, Plaintiff contacted Mandy as instructed and was informed by Mandy that he would not be scheduled to work.  Plaintiff immediately inquired as to why he was not scheduled, but Mandy refused to provide any further information to Plaintiff and promptly ended the call.

39.      Shortly thereafter, Plaintiff contacted Mandy again to inquire about his shift scheduling.  On this call, Mandy deflected all of Plaintiff's inquiries and then asked Plaintiff if he could provide a doctor's excuse for the Psychologist Appointment.

40.      Plaintiff was confused and flabbergasted by Mandy's inquiry concerning a doctor's excuse as he was permitted a few hours of time off from work in order to attend the Psychologist Appointment and Mandy knew with specificity the Psychologist Appointment was to combat the Disability.

41.      On March 1, 2023, despite his rebuttals and the facts surrounding the Psychologist Appointment, Mandy informed Plaintiff that his employment with Save-A-Lot was terminated for a "no call/no show".

42.      Subsequent to the termination from Mandy, Plaintiff approached Shakeel Doe to file a formal complaint against Mandy and to lay out the facts surrounding his termination.  Ultimately, Shakeel Doe offered no substantive response or reprieve for Plaintiff, and upheld Plaintiff's termination.

**COUNT I**
**HOSTILE WORK ENVIRONMENT**
**IN VIOLATION OF TITLE VII AND THE PHRA**
**42 U.S.C. § 2000e, *et seq.* and 43 P.S. § 951, *et seq***

43.      Plaintiff incorporates the above paragraphs, as if fully set forth at length herein.

44.     To establish a hostile work environment claim under Title VII an employee must show that "(1) the employee suffered intentional discrimination because of his/her sex (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) the existence of *respondeat superior* liability." See *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013).

45.     The 3rd Circuit has also noted that severe or pervasive is the correct standard under which apply a totality of the circumstances approach in examining "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." See *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993).

**A.     Plaintiff Suffered Intentional Discrimination Because of His Sex.**

46.     As stated above, Plaintiff is a biological male.

47.     Throughout the course of his employment, Mandy made repeated sexually charged comments and advances towards Plaintiff because of his sex.

48.     Plaintiff's similarly situated non-biological male coworkers were not subjected to the same sexually hostile and aggressive comments and advances.

**B.     The Discrimination Plaintiff Endured was Sufficiently Severe and Pervasive Within the Work Environment and Would Have Detrimentally Impacted a Similarly Situated Person.**

49.     At all times relevant hereto, the discrimination that Plaintiff was subjected to was both "severe" and "pervasive".

50.     The 'severe or pervasive' standard requires conduct that is sufficient 'to alter the conditions of [the employee's] employment and create an abusive working environment.'" *Hawkins*

9

*v. City of Philadelphia*, 571 F. Supp. 3d 455, 463 (E.D. Pa. 2021) citing *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206 , 214-15 (3d Cir. 2017).  Furthermore, whether an environment is "sufficiently hostile or abusive" is measured through a totality of the circumstances including the frequency, the severity, whether it is physically threating or humiliating, and whether it unreasonably interferes with an employee's workplace performance. *Id.* at 215 citing *Clark Cty. Sch. Dist. V. Breeden*, 532 U.S. § 268, 270-71 (2001).

51.     Save-A-Lot's conduct, through Mandy, was at all times, both humiliating and served to interfere with Plaintiff's ability to perform his work duties.  Specifically, Mandy refused to allow Plaintiff to alter his work schedule to evade her abuse and forced Plaintiff to remain working on the same shift as her, subjecting him to further abuse.

52.     Further, as a result of Save-A-Lot's and Mandy's conduct, Plaintiff suffered from emotional distress and anguish everyday as he was forced to work with Mandy and be subjected to sexually charged hostilities.

**C.     Respondeat Superior Liability Exists Due to Mandy's Overt Role in Facilitating the Discrimination.**

53.     *Respondeat Superior* liability exists in connection with Title VII claim for a hostile work environment if: (1) the tort is committed within the scope of employment (i.e., the harasser has actual authority over the victim, by virtue of his job description); (2) the employer was negligent or reckless in failing to train, discipline, fire or take remedial action upon notice of harassment; or (3) the offender relied upon apparent authority or was aided in commission of the tort by the agency relationship.  *Murphy v. Hotwire Commc'ns, LLC*, No. 19-5901, 2020 BL 168067, at *5 (E.D. Pa. May 5, 2020) citing *Bonenberger v. Plymouth Twp.*, 132 F.3d 20 , 26 (3d Cir. 1997).

54.     At all times relevant hereto Mandy exercised organizational authority over Plaintiff

10

and effectuated the hostile work environment.

55.     Further, it is clear that Save-A-Lot failed to take remedial action upon notice of the harassment, as Plaintiff informed both Shakeel Doe and Mandy that he was experiencing hostilities and wanted them to cease.

56.     Accordingly, *respondeat superior* liability attaches to Save-A-Lot in light of their failure to properly train its employees and agents in furtherance of its duty to provide a work environment free of discrimination and hostilities.

57.      As a direct and proximate result of Save-A-Lot's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff, Justin Parshall, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT II
### RETALIATION ON THE BASIS OF REPORTING
### IN VIOLATION OF TITLE VII AND THE PHRA
### 42 U.S.C. § 2000e, *et seq.* and 43 P.S. § 951, *et seq*

58.     Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

59.     Title VII makes it unlawful for an employer to retaliate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter…"  42 U.S.C. § 2000e-3(a).

60.     Title VII's purpose is to "encourage employees to report harassing conduct before it becomes severe or pervasive."  *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 764 (1998).

Specifically, the case law has held that a plaintiff must prove "that the desire to retaliate was the but-for cause of the challenged employment action" in order to satisfy the causation element of a Title VII retaliation claim. *Moore v. City of Philadelphia*, 461 F.3d 331, 340 (3d Cir. 2006).

61.     To establish a claim for retaliation, a plaintiff must show "(1) [that he engaged in a] protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir.2007) (quoting *Fogleman v. Mercy Hosp. Inc*., 283 F.3d 561, 567–68 (3d Cir.2002)): *see also Canada v. Samuel Grossi & Sons, Inc*., 49 F.4th 340, 346 (3d Cir. 2022).

**A.      Plaintiff engaged in a Protected Activity.**

62.     Plaintiff engaged in a protected activity when he rebutted Mandy's sexually hostile comments and statements.  Mandy was Plaintiff's direct report, and as she was perpetuating the hostilities when Plaintiff expressed his displeasure about the comments to Mandy, he was reporting the hostile conduct.

63.     Further, Plaintiff escalated his reports by reporting Mandy's conduct to Shakeel Doe.

**B.      Plaintiff Suffered an Adverse Action Following his Protected Activity.**

64.     As delineated above, Plaintiff expressed his displeasure at the comments to Mandy each time she made an egregious comment.

65.     Shortly after becoming aware that Plaintiff intended to report her hostile conduct and sexually charged comments to Mr. Doe, Mandy terminated Plaintiff's employment.

**C.      A Causal Connection Exists Between Plaintiff's Protected Activity and Defendant's Adverse Actions.**

66.     A causal connection readily exists between Plaintiff's protected activity and the

adverse actions described above.

67.     The Third Circuit recognizes that a plaintiff can establish their protected activity was a "but-for cause of the alleged adverse action by the employer" by and through temporal proximity that is "unusually suggestive of retaliatory motive."   *Hukman v. Am. Airlines, Inc*., 796 F. App'x 135, 142-143 (3d Cir. 2019) (citing *Univ. of Tex. Sw. Med. Ctr. V. Nassar*, 570 U.S. 338m 362 (2013); *Carvalho-Grevious v. Del. State Univ*., 851 F.3d 249, 260 (3d Cir. 2017)).

68.     Given the close temporal proximity that exists from the time Plaintiff complained about the discrimination to his supervisors and the disparate treatment suffered, ultimately a termination of employment, it is necessarily inferable that Save-A-Lot retaliated against Plaintiff for the complaints of sexually charged comments and hostilities.

69.     In February 2023, Plaintiff informed Mandy he was planning on escalating his reports to her supervisors, and at the same time, expressed his displeasure with her conduct.  As Mandy was Plaintiff's direct supervisor, Plaintiff correctly levied his complaints to Mandy.

70.     Thereafter, in March 2023, Plaintiff's employment was terminated by Mandy for a purported "no call/no show" despite having clear approval from Mandy to take leave.

71.     Once again, given the close causal nexus that exists between the time Plaintiff filed the above-mentioned discrimination reports to Save-A-Lot (initiating in January 2023, and ending in February 2023, to Plaintiff's termination in March 2023), a sustainable inference arises that Save-A-Lot terminated Plaintiff in retaliation for Plaintiff's protected activity.

72.     As a direct and proximate result of Save-A-Lot's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in

addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff, Justin Parshall, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

<u>COUNT III</u>
**DISCRIMINATORY TERMINATION IN
VIOLATION OF THE ADA AND THE PHRA
42 U.S.C. § 12101, *et seq.;* 43 Pa. Cons. Stat. § 951, *et seq.***

73.    Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

74.    The ADA was enacted in 1990 in an effort to provide a national mandate designed to eliminate discrimination against qualified individuals living with disabilities.  42 U.S.C. § 12101.  Accordingly, the ADA provides that no employer shall discriminate against an individual on the basis of their disability with regard to the terms, conditions, and privileges of employment.  *See* 42 U.S.C. § 12112(a).

75.    To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show that: (1) they are a disabled person within the meaning of the ADA; (2) the disabled person is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) the disabled person suffered an otherwise adverse employment decision as a result of discrimination.  *McGlone v. Philadelphia Gas Works*, 17-1399, 2018 WL 2193658, at \*2 (3d Cir., filed May 14, 2018) (citing *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)).

**A.    Plaintiff is a "disabled person" Pursuant to 42 U.S.C. 12102 of the ADA.**

76.    A person with a disability is someone who (i) has a physical or mental impairment that substantially limits one or more major life activities; (ii) has a history or record of such an impairment; and (iii) is perceived by others as having such an impairment.  42 U.S.C. 12102(1).

14

77.     As established herein, Plaintiff is a "disabled person" for purposes of establishing

his *prima facie* case under the ADA, given the numerous ways in which the Disability substantially

impaired his major life activities, including but not limited to, working, pursuing personal hobbies

and fulfillment, sleeping, and concentrating.  Accordingly, Plaintiff is a "disabled person" within

the meaning of the ADA.

**B.     Plaintiff is a "qualified individual" pursuant to 42 U.S.C. § 12111 of the ADA and was qualified to perform the essential functions of his job with or without reasonable accommodations.**

78.     At all times material, Plaintiff was qualified to perform the essential functions of

his position.  The ADA provides that a "qualified individual" is "an individual who, with or without

reasonable accommodation, can perform the essential functions of the employment position that

such individual holds or desires."  42 U.S.C. § 12111(8).  To meet this definition, Plaintiff must

show he possesses "the requisite skill, experience, education and other job-related requirements of

the employment position" and that he "can perform the essential functions of the position with or

without reasonable accommodations."  *Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 278 (3d

Cir. 2001) citing *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 145 (3d Cir.1998).

79.     Plaintiff possessed and exercised the skill, experience, and ability needed to

perform the essential functions of the Position.  Specifically, Plaintiff was sufficiently skilled in

the areas of organization, inventory analysis, comprehension, and communication.  Further, during

his employment, Plaintiff performed his assignments without a single issue or complaint levied

against him.

80.     In other words, Defendant ratified the fact that Plaintiff was qualified to perform

the essential functions of the Position, and clearly Plaintiff meets the definition of a "qualified

individual" under the ADA.

**C.     Plaintiff suffered an "adverse employment action" as a result of discrimination.**

81.     "It is well settled that termination is an adverse employment action."  *Dreibelbis v. Cnty. Of Berks*, 438 F. Supp. 3d 304, 315 (E.D. Pa. 20202) (internal citation omitted).

82.     Save-A-Lot terminated Plaintiff and clearly did so as a result of discrimination against Plaintiff based upon the Disability.  First, Plaintiff notifies Save-A-Lot and Mandy of his Disability, then Plaintiff requested leave to attend the Psychologist Appointment.  Then, Save-A-Lot refused to place Plaintiff on the employee schedule, then notified Plaintiff that he was terminated by Defendant for a "no call/no show".

83.     Therefore, it is readily inferable that Defendant terminated Plaintiff because of his Disability in violation of the ADA.

**D.     Plaintiff is entitled to pursue punitive damages as Save-A-Lot discriminated against him with malice and reckless indifference to his federally protected rights.**

84.     A plaintiff may recover punitive damages where he can demonstrate a defendant "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual."  *Godwin v. George Washington, LP*, No. 22-1066, 2022 BL 467663, at *3 (W.D. Pa. Dec. 30, 2022) citing 42 U.S.C. § 1981(a)(b)(1).  The terms "malice" and "reckless indifference" pertain specifically to the defendant's knowledge that it acted in violation of federal law rather than an awareness of engaging in "discrimination."  *Id.* citing *Kolstad v. American Dental Ass'n*, 527 U.S. 526 , 535 (1999).

85.     At all times material, Save-A-Lot acted with the knowledge that it was lawfully required to provide a workplace free of discrimination to individuals like Plaintiff who were statutorily protected by the ADA.  In terminating Plaintiff, Save-A-Lot acted both with malice and reckless indifference to Plaintiff's federally protected rights, and Save-A-Lot's actions warrant Plaintiff's recovery of punitive damages pursuant to 42 U.S.C. § 1981(a)(b)(1).

86.     As a direct and proximate result of Save-A-Lot's conduct described hereinabove,

16

Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff, Justin Parshall, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

**JURY DEMAND**

87.    Plaintiff demands a trial by jury on all matters so triable.

***AD DAMNUM* CLAUSE AND REQUEST FOR RELIEF**

88.    For the above-stated reasons, Plaintiff, Justin Parshall, respectfully requests this Honorable Court to enter judgment in his favor, and against Defendant, Warraich Brothers, LLC d/b/a Save-A-Lot, and prays for relief as follows:

      a.    Declare and find that Defendant committed one or more of the following acts:

            i.    Violated provisions of Title VII and the PHRA in perpetuating a sexually hostile work environment;

            ii.    Violated provisions of Title VII and the PHRA by retaliating against Plaintiff for reporting a sexually hostile work environment; and

            iii.    Violated provisions of the ADA and PHRA by discriminatorily terminating Plaintiff's employment.

      b.    Award liquidated damages on all compensation due and accruing from the date such amounts were due in equal amounts pursuant to Plaintiff's unpaid minimum and overtime wages pursuant to Title VII, the ADA, and/or the

17

PHRA;

c.      Award pre-judgment and post-judgment interest where accorded by law;

d.      Award reasonable attorney's fees and costs of suit incurred prosecuting these claims;

e.      Award injunctive and other equitable relief as provided by law; and

f.      Award such other and further relief as this Court deems just, equitable, and proper.

Respectfully submitted,

**THE WORKERS' RIGHTS LAW GROUP, LLP**

Date:  September 9, 2024              By: */s/ Erik M. Yurkovich*
                Kyle H. Steenland (Pa. I.D. No. 327786)
                Erik M. Yurkovich (Pa. I.D. No. 83432)

                The Workers' Rights Law Group, LLP
                Foster Plaza 10
                680 Andersen Drive, Suite 230
                Pittsburgh, PA 15220
                Telephone: 412.910.9592
                Facsimile: 412.991.7510
                kyle@workersrightslawgroup.com
                erik@workersrightslawgroup.com

                *Counsel for Plaintiff, Justin Parshall*